UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS BIGGS, et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:20-cv–01499-JCH |
| | ) |
| CITY OF MARYLAND HEIGHTS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. Doc. [51]. The Motion is fully briefed and ripe for review. For the reasons set forth below, the Motion is granted.

### FACTS AND BACKGROUND

Plaintiff Demetrius Biggs and his daughter, A.B., initiated this action under 42 U.S.C. § 1983 and various state law claims on October 16, 2020, and later filed an Amended Complaint on March 26, 2021. Docs. [1], [25]. Plaintiffs name as Defendants the City of Maryland Heights and Officer Adam Munoz, who is sued in both his individual and official capacity. Plaintiffs' First Amended Complaint sets forth seven claims for relief against Defendants. Counts I and II are Fourth Amendment claims brought under Section 1983 against Munoz for unreasonable seizure and excessive force. Counts III through VII are state law claims against both Defendants: Count III is for assault; Count IV is for false imprisonment; Count V is for intentional infliction of emotional distress; Count VI is for negligent infliction of emotional distress; and Count VII is for battery.

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiffs for purposes of the Motion before the Court, the record establishes the following:

This case arises out of a traffic stop that occurred in Maryland Heights, Missouri, on December 1, 2019, at approximately 7:00 p.m. Biggs, who had his daughter A.B. in the back seat of his Chevrolet Trailblazer, was driving on Westline Industrial Drive in the area that Officer Munoz was assigned to patrol that evening. Munoz noticed that Biggs's vehicle was missing a front license plate, which is a violation of Mo. Rev. Stat. § 301.130. Munoz activated his emergency lights and followed the Trailblazer in an attempt to stop the vehicle. However,

1

despite Officer Munoz's attempts to stop Biggs, Biggs continued driving. After Biggs did not pull over, Officer Munoz activates his emergency siren and continued following the Trailblazer for approximately a quarter of a mile. Officer Munoz became concerned that the driver of the Trailblazer may be intoxicated or may be attempting to conceal evidence. As the Trailblazer continued to drive forward at a slow pace, Officer Munoz pulled in front of the vehicle to force it to stop. Once the Trailblazer came to a stop, Munoz believed the Trailblazer had struck the police vehicle because its headlights were so close to the cruiser, so Munoz called in a "10-50" message on his radio, which indicates that a police vehicle had been hit.[1]

Officer Munoz then exited his vehicle and called for back-up. At this time, Officer Munoz had no idea why the driver of the Trailblazer has failed to stop, and he feared for his safety. Munoz drew his firearm and pointed it towards Biggs, ordering him to raise his hands. As Munoz pointed his firearm, he also activated the flashlight affixed to the top of the weapon so that he could see inside the Trailblazer. Biggs raised his hands, and Officer Munoz, believing that Biggs was no longer a threat, moved the line of sight for his firearm away from Biggs.[2]

Officer Munoz then waited for backup to arrive. When Sergeant Scot Dunn arrived to assist, Biggs was taken out of the Trailblazer, handcuffed, and placed in the backseat of a patrol vehicle. The officers then learned that Biggs's daughter A.B. was in the back of the Trailblazer. She remained in her seat while her father was detained in the patrol vehicle. Biggs explained that he did not stop because he wanted to find a well-lit spot to pull over. Officer Munoz and Sergeant Dunn discussed the situation and decided to release Biggs with a verbal warning for failure to display a license plate, and Plaintiffs left the scene.

Following the incident, Biggs filed a complaint with the Maryland Heights Police Department, and the Department conducted an investigation of the encounter. Upon conclusion of the investigation, the Department issued a reprimand to Officer Munoz, finding that he had violated Department policy by using a rolling roadblock to stop Bigg's vehicle, and by failing to report that he drew his firearm during the stop. Officer Munoz was not found to have violated any Department policy by stopping Biggs other than the manner used to effectuate the stop.

---

[1] Officer Munoz later realized that the two vehicles had not collided.
[2] Plaintiffs dispute that Munoz moved the line of sight away from Biggs, and argue that a video supports their assertion that he did not do so. However, Plaintiffs do not provide the video for the Court's review and cite to no other evidence of record to support their disputation. In any event, the dispute is not material, as it does not affect the Court's analysis of Plaintiff's claims.

Additionally, Officer Munoz did not violate Department policy, and was not reprimanded for drawing his firearm.

Defendants filed the instant Motion for Summary Judgment on Plaintiff's Amended Complaint on November 19, 2021, claiming that Munoz is entitled to qualified and official immunity and Maryland Heights is entitled to sovereign immunity.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)).

Motions for summary judgment in qualified immunity cases are "unique in that the court should not deny summary judgment any time a material issue of fact remains on the constitutional violation claim . . . ." *Jones v. McNeese*, 675 F.3d 1158 (8th Cir. 2012) (quoting *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 671 (8th Cir. 2007)) (cleaned up). Because qualified immunity "is an immunity from suit rather than a mere defense to liability[,]… it is effectively lost if a case is erroneously permitted to go to trial. *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). Therefore, in a qualified immunity case, the court must "take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party so long as those facts are not so blatantly

3

contradicted by the record that no reasonable jury could believe them." *Id.* (quoting *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007)) (cleaned up).

## DISCUSSION

### I. Qualified and Sovereign Immunity

*Qualified Immunity*

Section 1983 of Title 42 of the United States Code imposes civil liability upon one:

> who, under the color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights," but affords "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). Thus, in considering a Section 1983 claim, a court must "identify the specific constitutional right infringed." *Id.* at 271 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known." *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). *See also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) "Unless both of these questions are answered affirmatively, [a defendant] is entitled to qualified immunity." *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014). The Court may decide which determination to make first, *Pearson v. Callahan*, 555 U.S. 223, 235-36

(2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

Although "[q]ualified immunity is an affirmative defense for which the defendant carries the burden of proof," the "plaintiff . . . must demonstrate that the law is clearly established." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002) (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)). "A right is clearly established only where it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. \_\_\_\_ (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam). Although case law directly on point is not necessary to demonstrate that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). The Supreme Court has continued to reiterate in recent decisions that clearly established rights "should not be defined at a high level of generality." *White*, 137 S. Ct. at 552 (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

*Sovereign Immunity*

Under Missouri law, public entities are entitled to sovereign immunity from tort claims unless: "1) the claimed injuries arose from an automobile accident in which public employees are involved; 2) the claimed injuries arose from the existence of a dangerous condition on public property; or 3) under certain circumstances, the [public entity] has waived sovereign immunity by purchasing liability insurance." *Parish v. Novus Equities Co.,* 231 S.W.3d 236, 245 (Mo.App.2007), citing Mo. Rev. St. §§ 537.600, 537.610; *Hummel v. St. Charles City R–3 School Dist.,* 114 S.W.3d 282, 284 (Mo.App.2003). Where the public entity has procured insurance for tort claims, "sovereign immunity is waived only to the maximum amount of coverage provided by the policy and only for the types of claims covered by the policy." *Parish,* 231 S.W.3d at 246 (citations omitted). Missouri courts construe any such waiver of sovereign immunity narrowly. *Topps v. City of Country Club Hills,* 272 S.W.3d 409, 415 (Mo.App.2008).

Because the liability of a public entity for torts is the exception to the general rule of sovereign immunity, a plaintiff must specifically plead facts demonstrating that the claim is

5

within an exception to sovereign immunity. Thus, to penetrate a claim of immunity under section 537.610.1, a plaintiff is required to demonstrate the existence of insurance and that it covered the plaintiff's claim. *Hummel,* 114 S.W.3d at 284 (citations omitted). Finally, "a public entity retains its full sovereign immunity when the insurance policy contains a disclaimer stating that the entity's procurement of the policy was not meant to constitute a waiver of sovereign immunity." *Parish,* 231 S.W.3d at 246 (citation omitted).

## II.     Unreasonable Seizure and Excessive Force Claims in Counts I and II

In Counts I and II of the First Amended Complaint, Plaintiffs allege that Officer Munoz violated their civil rights pursuant to 42 U.S.C. § 1983 when he used a rolling roadblock to stop their vehicle and then drew his firearm and pointed it at Biggs during the December 1, 2019, incident. Officer Munoz argues that he used objectively reasonable force in light of the circumstances, and consequently, his actions did not constitute excessive force pursuant to Section 1983. Therefore, he argues that he is entitled to qualified immunity on Counts I and II.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite v. Wright,* 147 F.3d 542, 544 (8th Cir.1996). It is uncontested that Biggs was seized as defined by *Terry v. Ohio,* 392 U.S. 1, 19 n. 16 (1968). The relevant inquiry, then, is "whether the amount of force used was objectively reasonable under the particular circumstances," *Greiner v. City of Champlin,* 27 F.3d 1346, 1354 (8th Cir.1994), or, even if not, whether it was clearly established that such use of force was unconstitutionally excessive. This inquiry must be evaluated from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation. *Graham v. O'Connor,* 490 U.S. 386, 395–97 (1989). Reasonableness of force depends on the facts and circumstances of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396–97. An officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

6

Defendants argue that the circumstances here are similar to those confronting the court in *Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006).  In that case, the plaintiff, a Type 1 diabetic, was experiencing the effects of low blood sugar and was driving erratically.  *Id*. at 1064-65.  The defendant officer activated his emergency lights and siren to initiate a traffic stop, but the plaintiff did not stop.  *Id*. The officer then asked for backup to lay "stop sticks" across the road and the plaintiff stopped, at which time the defendant officers approached the vehicle with their weapons drawn and ordered the plaintiff out of the car.  *Id*.  When the plaintiff did not exit the car, an officer grabbed him, pulled him out of the vehicle, pushed him to the ground, handcuffed him, and placed him in the officer's vehicle.  *Id*.  Officers then learned of Wertish's medical condition, and no charges were filed.  *Id*.  Wertish sued the officers for excessive force, and the Eighth Circuit concluded that the officer's actions were not unreasonable.  *Id*. at 1065-66. The Court focused on what the officers knew at the time, which is that the plaintiff was driving erratically and ignoring commands to pull over, and concluded that the officers had probable cause to pull over the vehicle, and that the plaintiff's passive resistance reasonably required "somewhat more force," and concluded that the officers were entitled to qualified immunity.  *Id*. at 1066-67).

Defendants argue that *Wertish* is similar to the circumstances here, noting that Officer Munoz attempted to effectuate a lawful traffic stop after observing a traffic violation, he pursued Biggs with activated lights and sirens, and when Biggs continued to drive, Munoz became suspicious and concerned for his own and the public's safety.  Also like in *Wertish*, after getting Biggs to stop his vehicle, Munoz pointed his firearm at Biggs while assessing the situation, and it was discovered that the driver was not attempting to evade the police, but was merely looking for a well-lit area to pull over.  Defendants argue that, just as in *Wertish*, this Court should not evaluate Officer's Munoz's actions based on what was later learned, as Munoz could not be expected to know why Biggs was failing to comply.  Defendants assert that it was reasonable for Munoz to conclude that Biggs was a potential threat when he did not follow commands to pull over, and that it was likewise reasonable to draw his firearm when first confronting Biggs, as Munoz knew only that he was facing a non-compliant suspect and did not know the level of threat posed.

Plaintiff argues that *Wertish* is distinguishable from this case because the officer in *Wertish* pursued the driver because he was driving erratically, at one point forcing another

7

motorist off the road, and refused to comply with the officer's orders after he stopped. Meanwhile, Officer Munoz was attempting to stop Biggs for nothing more serious than a missing license plate, and that Biggs simply drove along slowly, and not erratically, after Officer Munoz activated his lights and siren.  Furthermore, after Biggs was stopped by Munoz's use of the rolling roadblock maneuver, he was entirely compliant with all of the officer's directives.  In light of this, Biggs argues that it was unreasonable for Officer Munoz to use the rolling roadblock to stop him, and to point his firearm at him for approximately two minutes.

Defendants respond that Plaintiff is asking the Court to look at the facts in hindsight, ignoring that Officer Munoz has no idea what, or who, waited on the other side of the tinted windows of Biggs's vehicle.  They further argue that it was not the missing license plate that caused Munoz to use a rolling roadblock and draw his weapon—rather it was Biggs's non-compliance and the potential threat he posed due to his refusal to stop.

While the Court appreciates both the similarities and differences between *Wertish* and the case at hand, there is another more recent Eighth Circuit case that is strikingly similar to the instant action, and which the Court finds instructive to the question before it.  In *Moore-Jones v. Quick,* 909 F.3d 983, 984 (8th Cir. 2018), a police officer driving a marked police car attempted to pull over a motorist for expired tags.  The officer engaged his emergency lights, sirens, and spotlight, thereby identifying himself as a law enforcement officer.  *Id*. at 985.  However, the driver continued to drive slowly along in an area that was "unlit and dark." *Id*.  Approximately one minute after his pursuit began, the officer used a Precision Immobilization Technique (PIT) maneuver to bump the plaintiff's car, causing it to spin into a ditch and hit a cement culvert, injuring plaintiff and her daughter, who was also in the vehicle.  *Id*.  Moore-Jones and her daughter sued the officer for excessive force and assault and battery, and Officer Quick sought summary judgment, invoking qualified immunity.  *Id*.  The district court relied on the clearly established general rule that "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public," and denied the officer's motion for summary judgment.  *Id*.

On appeal, the Eighth Circuit held that this general rule does not apply with "obvious clarity" to the specific conduct involved, *i.e.*, using a PIT maneuver to force a driver to stop, where the plaintiff refused to pull over.  *Id*. at 986.  The circuit court stated that "[f]rom a reasonable officer's perspective, [the driver] refused to comply with commands to pull over . . .

8

and Quick was justified in using some force to secure compliance." *Id*. (citing *Neal v. Ficcadenti*, 895 F.3d 576, 581 (8th Cir. 2018) ("Law enforcement officers are not required to read a suspect's motivations in failing to obey commands—it is enough that the officer reasonably perceives that the suspect is not following orders as given ."). The court identified the issue as "whether existing precedent put the reasonableness of [the officer's] decision beyond debate." *Id*. (internal quotations omitted). After examining case law involving similar conduct, the circuit court concluded the officer's actions were in the "hazy border between excessive and acceptable force" and that the district court had erred in concluding that the plaintiff's right to be free from a PIT maneuver in these circumstances was clearly established. *Id*. at 986.

While the rolling roadblock maneuver used by Officer Munoz to force Biggs to stop is not identical to the PIT maneuver used in *Moore-Jones*, it is nonetheless quite similar. If anything, the rolling roadblock constituted a lesser degree of force than the PIT maneuver used by Officer Quick. In *Moore-Jones* the maneuver forced the plaintiff off the road, resulting in both the driver and her daughter being injured, whereas here, Biggs came safely to a stop and no one was injured. Other than that, the circumstances in *Moore-Jones* were almost identical to what occurred here: both plaintiffs committed a minor traffic violation, and did not pull over after an officer pursued them with emergency lights and sirens, but kept driving slowly along until forced to stop by the officer's patrol vehicle. The Court finds that *Moore-Jones* forecloses Plaintiff's claim that use of the rolling roadblock clearly constituted an unreasonable seizure accomplished through excessive force.

Biggs also argues that Officer Munoz used excessive force when he pointed his gun at him for almost two minutes. After stopping Biggs's Trailblazer, Officer Munoz exited his vehicle and called for back-up. At this time, Officer Munoz had no idea why the driver of the Trailblazer has failed to stop, and he feared for his safety. Munoz drew his firearm and pointed it towards the driver and ordered him to raise his hands. As Munoz pointed his firearm, he also activated the flashlight affixed to the top of the weapon so that he could see inside the Trailblazer. Biggs then raised his hands, and Munoz did not lower his weapon until after backup arrived.

The Eighth Circuit has previously found police officers were entitled to qualified immunity when they pointed a gun at a suspect during a pursuit. *See Edwards v. Giles*, 51 F.3d 155 (8th Cir. 1995). In *Clark v. Clark*, 926 F.3d 972, 976 (8th Cir. 2019), the plaintiff

9

voluntarily pulled over after seeing multiple police cars. The officers in *Clark* were aware that the plaintiff had a firearm, so they approached his car with their weapons drawn and aimed at him. *Id*. The plaintiff sued, claiming that the officers used excessive force by pointing their firearms at him.

The circuit court reviewed several cases from this circuit and other circuits that have found that pointing a gun may constitute an unconstitutional display of force, but found that those cases were not analogous because, in all those cases, the officers had pointed their weapons at a suspect for unreasonably long periods time, well after police had taken full control of a situation. *Id*. at 979 (citing *Rochell v. City of Springdale Police Dep't,*, 2019 WL 1859237 (8th Cir. Apr. 25, 2019) (keeping firearm pressed behind suspect's ear after he had surrendered and was compliant was excessive force); *Wilson v. Lamp*, 901 F.3d 981 (8th Cir. 2018) (continuing to point weapon at suspect after determining that detained driver was not the person being sought and he had been patted down and found unarmed was excessive); *Mlodzinski v. Lewis*, 648 F.3d 24, 38 (1st Cir. 2011) (pointing assault rifle at head of innocent, non-threatening, and handcuffed fifteen year old girl for seven to ten minutes was excessive); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192-93 (10th Cir. 2001) (for SWAT team to point firearms directly at unarmed children who posed no risk of injury or danger for ten to fifteen minutes was unreasonably excessive force). Meanwhile, in the circumstances present in *Clark*, a "reasonable officer was justified in believing the situation was not fully under control until [the plaintiff] had been removed from the vehicle, patted down, and restrained, and that pointing a firearm at him until that time did not constitute excessive force, and did not violate the Fourth Amendment. *Id. at* 977.

Similarly, in *Pollreis v. Marzolf*, 9 F.4th 737, 749 (8th Cir. 2021), the Court determined that pointing a firearm at two compliant juvenile suspects for seven minutes before a situation was under control was not an excessive use of force. In *Pollreis*, an officer was looking for suspects who had fled from a car crash, and came upon two teenagers who roughly fit the description, and pointed his weapon at them while waiting for backup. *Id*. at 741. The circuit court concluded that the officer was entitled to qualified immunity for the excessive force claim because he pointed his firearm at the teenagers before the situation was under control, and it was reasonable for him to wait for backup before concluding the teenagers did not pose a threat. *Id*. at 747-48.

10

In a case such as the one now before the Court, the Supreme Court's admonition that an officer's actions must be judged objectively from the perspective of a reasonable officer on the scene and not "with the 20/20 vision of hindsight" is particularly salient. *Graham* at 396. Given the benefit of retrospect, it may have been understandable that Biggs wished to drive himself and his young child to what seemed like a safe, well-lit location to pull over, and had Officer Munoz known what was happening, he is not likely to have found Biggs's actions threatening or suspicious. However, the law does not (nor could it) demand that an officer pursue a course of conduct that appears ideal when judged retrospectively with the benefit of full knowledge of all relevant circumstances. Considering Officer Munoz's perspective at the time, all he knew was that Biggs did not stop his vehicle for a quarter of a mile, despite Officer Munoz activating his lights and siren. Officer Munoz was not aware of the reason for Biggs's failure to pull over, and it was reasonable for him to believe that Biggs was intoxicated or fleeing, and that he possibly represented a danger to Munoz and the public at large. Pulling his firearm and pointing it at Biggs until he was certain the situation was under control and his safety was not threatened was objectively reasonable under the circumstances.

Upon assessing the actions of Officer Munoz "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight," *Kingsley*, 576 U.S. at 397, the Court concludes that Munoz's actions did not constitute excessive force pursuant to § 1983, as the use of force was arguable objectively reasonable in light of the circumstances, and in any event, the right to be free from such force was not clearly established at the time of the incident. Accordingly, Officer Munoz is entitled to qualified immunity on Counts I and II.

*Monell* Claims

State officials, including police officers, may be named in § 1983 lawsuits in either their official capacity, their personal (or "individual") capacity, or both. In this case, Plaintiffs have sued Officer Munoz in his individual and official capacity in Counts I and II. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the

11

County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Therefore, Plaintiffs' claims against Munoz in his official capacity are actually claims against the City.

A local governing body such as Maryland Heights can be sued under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

The Court finds that Plaintiffs' *Monell* claims fail as a matter of law. "In order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994); *accord McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). However, here the Court has granted Munoz judgment as a matter of law on the Section 1983 claims. Therefore, the City cannot be held liable on a municipal liability theory.[3] *See McCoy*, 411 F.3d at 922 (summary judgment for defendant officer on excessive force claim precluded City from liability on an unconstitutional policy or custom theory). As such, the Court will grant Defendants' Motion with respect to Plaintiffs' *Monell* claims against the City.

---

[3] Additionally, as Defendants argue, Plaintiffs did not plead an unconstitutional official policy, unofficial custom, or failure to train or supervise. Because Plaintiffs' complaint is devoid of any facts supporting their *Monell* claims, they fail as a matter of law for that reason as well, as the Court is bound by the allegations found in Plaintiffs' complaint. *See, e.g.*, *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012) (a district court properly refuses to consider allegations that were not pled).

**III.     State Law Claims in Counts III through VII**

Plaintiffs bring several state law claims against Munoz and the City:  Count III is for assault; Count IV is for false imprisonment; Count V is for intentional infliction of emotional distress; Count VI is for negligent infliction of emotional distress; and Count VII is for battery.  Officer Munoz argues that he is entitled to official immunity.  Officer Munoz argues that he entitled to official immunity on these claims.  Additionally, the City argues that it is entitled to sovereign immunity on each of these claims.  For the following reasons, the Court agrees.

*Official Immunity for Officer Munoz*

In Missouri, the doctrine of official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008).  All the state law tort claims against Munoz involve the use of force, and Missouri courts have found that the use of force is a discretionary duty.  *See Green v. Denison,* 738 S.W.2d 861, 865 (Mo. 1987) ("Discretion and judgment are synonymous. It is hard to imagine a setting more demanding of judgment than one in which line officers of the police department confront a person who has recently flourished a gun."), *abrogated on other grounds by Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760 (Mo. 2006).  *See also Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002 (an officer is performing a discretionary . . . act and thus is protected by official immunity, when he executes a warrant, draws and fires a weapon, or draws and points a weapon at a suspect.").  "Police officers are not liable for negligent acts that are related to discretionary functions . . .. But official immunity does not apply to discretionary acts done in bad faith or with actual malice." *Blue v. Harrah's N. Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005).  Therefore, Officer Munoz could be liable only if he acted with malice.

A finding of malice requires "conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (citation omitted).  Acting with malice requires an "actual intent to cause injury."  *Id*.  A finding of bad faith " 'embraces more than bad judgment or negligence.  It imports a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive.' " *Id*. (quoting *Catalina v. Crawford,* 19 Ohio App.3d 150, 483 N.E.2d 486, 490 (1984)).

There is no evidence in the record that could support a contention that Officer Munoz acted with such reckless or wanton bad faith that his actions were taken with actual malice, and Plaintiffs' state law tort claims against him for assault, false imprisonment, intentional infliction or emotional distress, negligent infliction of emotional distress, and battery fail as a matter of law.

*Sovereign Immunity for the City*

Defendants argue that the City is entitled to summary judgment as to Counts III through VII on the basis of sovereign immunity. Under Missouri law, the City is entitled to sovereign immunity from tort claims "unless the General Assembly has waived such immunity." *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. Ct. App. 2012) (quoting *Kraus v. Hy-Vee, Inc.*, 147 S.W.3d 907, 914 (Mo. Ct. App. 2004)); Mo. Rev. Stat. § 537.600. In addition to express waivers, the City can waive sovereign immunity if the governing body either: (1) "purchase[s] liability insurance for tort claims" or (2) "duly adopts" a "self-insurance plan[.]" Mo. Rev. Stat. § 537.610. Waivers of sovereign immunity are construed narrowly, and "the extent of the waiver is expressly dictated, and limited, by the terms of the insurance policy." *Hendrix v. City of St. Louis*, 636 S.W.3d 889, 900 (Mo. Ct. App. 2021) (quoting *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 415 (Mo. Ct. App. 2008)). Section 537.610 provides that the scope of any waiver of immunity is limited to "such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body" of the municipality. Mo. Rev. Stat. § 537.610. "The plaintiff shoulders the burden of proving the existence of an insurance policy and that the terms of the policy cover the plaintiff's claim." *Id.* (citing *Topps*, 272 S.W.3d at 415; *Brennan By & Through Brennan v. Curators of the Univ. of Missouri*, 942 S.W.2d 432, 436-37 (Mo. Ct. App. 1997)).

Plaintiffs argue that the City has expressly waived sovereign immunity via Mo. Rev. Stat. § 537.600.1(1), which provides an express waiver of sovereign immunity from liability for injuries resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment. However, Defendants argue, and the Court agrees, that Mo. Rev. Stat. § 537.600 does not waive sovereign immunity for civil rights claims brought under Section 1983. *See Theisen v. Stoddard County,* 2014 WL 4229793, *2 (Aug. 26, 2014, E.D. Mo) ("[T]he Eighth Circuit has repeatedly held that Missouri's narrow waiver of its immunity in Section 537.600 does not include claims brought under 42 U.S.C. § 1983.").

14

Plaintiffs also argue that the City has waived sovereign immunity by purchasing liability insurance to cover certain tort claims, citing to *Kunzie v. City of Olivette*, 184 S.W. 3d 570, 574 (Mo. banc 2006).  The *Kunzie* court held that a municipality's procurement of insurance "constitutes an absolute and complete waiver of all immunities." *Id*.  Plaintiffs maintain that because the City has purchased insurance from the St. Louis Area Insurance Trust, which provides coverage for claims against the City, it has waived sovereign immunity.  However, "a public entity retains its full sovereign immunity when the insurance policy contains a disclaimer stating that the entity's procurement of the policy was not meant to constitute a waiver of sovereign immunity." *Parish v. Novus Equities Co.,* 231 S.W.3d 236, 246 (Mo. Ct. App. 2007), citing Mo. Rev. St. §§ 537.600.

In the instant case, the insurance policy at issue contains the following relevant provision:

> Nothing contained in this Policy shall constitute any waiver of any kind of the defenses or limitations of sovereign immunity, governmental immunity or official immunity.  The Insuring Agreement is not intended to provide coverage for any liability, claim, suit, or damages which are barred by the doctrines of sovereign immunity, governmental immunity, or official immunity, by whatever name, as set forth in §§ 537.600-537-650 R.S.Mo, as amended from time to time and as established by common law.

Defendants argue, and the Court agrees, that the clear language of the insurance policy shows that the City intended to retain and did not waive sovereign immunity.  The City is accordingly entitled to judgment as a matter of law on the basis of sovereign immunity on all claims against it.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. [51]) is **GRANTED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 9th day of May, 2022.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE