UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS BIGGS, et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:20-cv–01499-JCH |
| | ) |
| CITY OF MARYLAND HEIGHTS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

In this matter, brought under 42 U.S.C. § 1983, Plaintiffs alleged that Defendants violated their civil rights during a traffic stop by the use of excessive force and an unreasonable seizure. The Court granted summary judgment in favor of Defendants on all counts in a Memorandum and Order issued on May 9, 2022. Doc. 61. Now before the Court is Defendants' motion seeking an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988. Doc. 64. For the reasons set forth below, the motion will be denied.

**BACKGROUND**

This case arises out of a traffic stop that occurred in Maryland Heights, Missouri, on December 1, 2019, at approximately 7:00 p.m. Biggs, who had his daughter A.B. in the back seat of his Chevrolet Trailblazer, was driving on Westline Industrial Drive in the area that Officer Munoz was assigned to patrol that evening. Munoz noticed that Biggs's vehicle was missing a front license plate. Munoz activated his emergency lights and followed the Trailblazer in an attempt to stop the vehicle. However, despite Officer Munoz's attempts to stop Biggs, Biggs continued driving. After Biggs did not pull over, Officer Munoz activated his emergency siren and continued following the Trailblazer for approximately a quarter of a mile. As the Trailblazer continued to drive forward at a slow pace, Officer Munoz pulled in front of the vehicle to force it to stop. Once the Trailblazer came to a stop, Munoz believed the Trailblazer had struck the police vehicle because its headlights were so close to the cruiser, so Munoz called

in a "10-50" message on his radio, which indicates that a police vehicle had been hit.[1]

Officer Munoz then exited his vehicle and called for back-up.  At this time, Officer Munoz had no idea why the driver of the Trailblazer has failed to stop, and he feared for his safety.  Munoz drew his firearm and pointed it towards Biggs, ordering him to raise his hands. As Munoz pointed his firearm, he also activated the flashlight affixed to the top of the weapon so that he could see inside the Trailblazer, at which point Biggs raised his hands.

Officer Munoz then waited for backup to arrive.  When Sergeant Scot Dunn arrived to assist, Biggs was taken out of the Trailblazer, handcuffed, and placed in the backseat of a patrol vehicle.  The officers then learned that Biggs's daughter A.B. was in the back of the Trailblazer. She remained in her seat while her father was detained in the patrol vehicle.  Biggs explained that he did not stop because he wanted to find a safe, well-lit spot to pull over.  Officer Munoz and Sergeant Dunn discussed the situation and decided to release Biggs with a verbal warning for failure to display a license plate, and Plaintiffs left the scene.

Following the incident, Biggs filed a complaint with the Maryland Heights Police Department, and the Department conducted an investigation of the encounter.  Upon conclusion of the investigation, the Department issued a reprimand to Officer Munoz, finding that he had violated Department policy by using a rolling roadblock to stop Bigg's vehicle, and by failing to report that he drew his firearm during the stop.  Additionally, the Chief of Police of the City of Maryland Heights sent a letter to Mr. Biggs apologizing for the conduct of Officer Munoz.  Doc. 66-1.

The Court granted summary judgment in favor of Defendants on all counts in a Memorandum and Order issued on May 9, 2022.  Doc. 61.  Defendants subsequently filed the instant motion under 42 U.S.C. § 1988, arguing that as the prevailing parties in a civil rights action, they are entitled to receive attorney's fees of $52,125.00, and costs and expenses of $14,236.95, for a total of $66,361.95.

## **DISCUSSION**

Parties to civil litigation are generally responsible for their own attorney's fees under the so-called "American Rule."  *See Sole v. Wyner*, 551 U.S. 74, 76 (2007). However, "[f]or private actions brought under 42 U.S.C. § 1983 and other specified measures designed to secure civil

---

[1] Officer Munoz later realized that the two vehicles had not collided.

rights, Congress established an exception to the 'American Rule.'" *Id.* at 77. The attorneys' fees provisions of the various federal civil rights statutes authorize an award of fees to the prevailing party without expressly distinguishing between a plaintiff and a defendant. For example, the relevant statute here, Section 1988, provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . .." 42 U.S.C. § 1988(b). However, courts have consistently distinguished between plaintiffs and defendants when determining whether a party is entitled to attorney's fees under the statute, finding that a prevailing plaintiff is ordinarily entitled to such fees, but holding defendants to a more rigorous standard. *See, e.g., Williams v. City of Carl Junction, Mo.*, 523 F.3d 841, 843 (8th Cir. 2008) (A prevailing defendant "is entitled to attorney's fees only in very narrow circumstances.") (quotations omitted); *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (The awarding of attorney fees against a nonprevailing plaintiff in a civil rights action is "an extreme sanction, and must be limited to truly egregious cases of misconduct."); *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 236 (1st Cir. 2010) (It is well established that "an award of fees in favor of a prevailing plaintiff in a civil rights suit is the rule, whereas fee-shifting in favor of a prevailing defendant is the exception.") (quotations omitted).

A plaintiff should not be assessed his opponent's attorney's fees unless the district court finds that his claim was "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curium) (quotations omitted); *see also Davis v. City of Charleston, Mo.*, 917 F.2d 1502, 1504-05 (8th Cir. 1990) (A defendant may recover fees under § 1988 only upon "well-supported findings" that the lawsuit was "frivolous, unfounded, and vexatiously brought and pursued."). The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of attorney's fees. As the Supreme Court has cautioned:

> [I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

Furthermore, courts should be mindful that if prevailing defendants were allowed to more easily recover fees, the underlying purpose of Section 1988—to provide incentives to enhance the prospect of prosecution in deserving civil rights cases—could be undermined. *City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986). If courts were to routinely award fees to prevailing defendants when the case does not clearly justify doing so, such a practice would undoubtedly have a chilling effect on civil rights litigation.

After careful consideration of the matter, the undersigned does not find that Plaintiffs' claims were frivolous, unreasonable, or groundless.  To find otherwise would be to engage in the sort of post hoc reasoning against which the Supreme Court has expressly cautioned.  *See Christiansburg Garment Co.*, 434 U.S. at 421.  Merely because this Court eventually held that Defendants were entitled to qualified immunity does not mean that Plaintiff's claims were unquestionably frivolous at the outset.  A civil rights litigant should not be punished for pursuing a reasonable legal theory. *See EEOC v. CVS Pharmacy*, Inc., 907 F.3d 968, 977 (7th Cir. 2018). Additionally, the Court finds no indication in the record that Plaintiff's claims were vexatiously brought.  Under these circumstances, the Court does not find this to be one of those rare, "truly egregious cases," in which the assessment of attorney's fees to the prevailing defendant may be justified.  *Jones,* 789 F.2d at 1232.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion for attorney's fees and costs is **DENIED.** Doc. [64].

Dated this 7th day of June, 2022.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE